UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ARETHA HARRIS,                    )    1:13CV1112
                                  )
              Plaintiff           )
                                  )
       v.                         )    MAG. JUDGE KENNETH S. McHARGH
                                  )
COMMISSIONER OF SOCIAL            )
    SECURITY ADMIN.,              )
                                  )
                                  )
              Defendant           )    MEMORANDUM
                                  )    AND ORDER


McHARGH, MAG. JUDGE

       The issue before the court is whether the final decision of the Commissioner

of Social Security ("the Commissioner") denying Plaintiff Aretha Harris'

applications for a Period of Disability and Disability Insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental

Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381

et seq., is supported by substantial evidence and, therefore, conclusive.


I.  PROCEDURAL HISTORY

       On January 21, 2010, Plaintiff Aretha E. Harris ("Harris") applied for

Disability Insurance benefits and for Supplemental Security Income benefits as

well.  (Doc. 13, Tr., at 146-149, 150-153.)  Harris stated that she became unable to

work because of her disabling condition on December 31, 2008.  (Tr., at 146, 150,

184.)  Harris listed her physical or mental conditions that limit her ability to work as "back, incontenent [sic]."  (Tr., at 184.)

Harris' application was denied initially and upon reconsideration.  (Tr., at 84-88, 92-104.)  On October 26, 2010, Harris filed a written request for a hearing before an administrative law judge.  (Tr., at 105.)

An Administrative Law Judge ("the ALJ") convened a hearing on December 13, 2011, to hear Harris' case.  (Tr., at 45-77.)  Harris was represented by counsel at the hearing.  (Tr., at 47.)  Dr. William F. Green ("Dr. Green"), a vocational expert, attended the hearing and provided testimony.  (Tr., at 73-77.)

On January 9, 2012, the ALJ issued his decision applying the standard five-step sequential analysis[1] to determine whether Harris was disabled.  (Tr., at 22-44.)

---

[1] Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other

2

Based on his review, the ALJ concluded Harris was not disabled.  (Tr., at 25, 38.)

Following the issuance of this ruling, Harris sought review of the ALJ's decision

from the Appeals Council.  (Tr., at 19-21.)  However, the council denied Harris'

request for review, thus rendering the ALJ's decision the final decision of the

Commissioner.  (Tr., at 1-7.)  Harris now seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

    Harris briefs a single issue:

> 1.  Whether the Administrative Law Judge erred in his determination
> that plaintiff is not disabled by pain while not giving deference to
> plaintiff's treating physicians.

(Doc. 18, at 1.)  She claims that her disability "relates to chronic pain stemming

from severe impairments including degenerative disc disease and fibromyalgia."

(Doc. 18, at 16.)


## II.  PERSONAL BACKGROUND INFORMATION

    Harris was born on August 25, 1982, and was 26 years old as of her alleged

disability onset date.  (Tr., at 52, 146, 150.)  Accordingly, Harris was at all times

considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§

---

work, in which case the claimant is not disabled.  Id. §
404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but
the burden shifts to the Commissioner at step five.  *Walters v. Comm'r
of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

404.1563(c), 416.963(c).  Harris' highest level of education was high-school graduate.  (Tr., at 52, 185.)  She has past work experience as a home health care aide, child daycare worker, and department store stocker.  (Tr., at 186, 199.)

## III.  MEDICAL EVIDENCE[2]

Counsel for Harris characterized Harris' case as "a chronic pain case" at the hearing.  (Doc. 13, tr., at 50.)  Harris was seen by Elizabeth Perstin, MD, of Lutheran Hospital on December 11, 2008.  (Tr., at 312.)  Harris complained to Dr. Perstin of vaginal discharge, along with constant abdominal pain.  (Tr., at 313.) Harris continued to complain of lower abdominal pain on January 13, 2009 (tr., at 366), and complained of moderate pelvic pain on February 6, 2009 (tr., at 297).

On July 15, 2009, John E. Jelovsek, MD, noted "chronic pelvic pain of undetermined etiology."  (Tr., at 390.)  Harris continued to complain of "vaginal pain, lower abdominal pain and back pain and pain with urination for 1 month" at an appointment with the gynecologist Beri M. Ridgeway, MD, on August 19, 2009. (Tr., at 398.)

Harris presented to the gynecologist Marie Fidela Paraiso, MD, on December 18, 2009, "because she wants every single STD check there is."  (Tr., at 414.)  Harris

---

[2] The following is merely a summary of the medical evidence relevant to the undersigned's decision.  It is not intended to fully reflect all of the evidence the undersigned took into consideration.  Given the contested issues in this case, the focus is on evidence concerning Harris' alleged "chronic pain stemming from severe impairments including degenerative disc disease and fibromyalgia."

reported that: "She has so much pain when it rains and she cannot even get up because she has pain all across her lower back." (Tr., at 414.)  Dr. Paraiso noted "I cannot produce the pain on exam." (Tr., at 414.)

Dr. Paraiso referred Harris for a lumbar spine MRI, given her history of "low back pain with radiculopathy." (Tr., at 351.)  The Dec. 24, 2009, MRI showed degenerative changes, most severe at L5-S1, which had "small left paracentral disk protrusion resulting in mass effect on traversing left S1 nerve root."  There was also minimal bulging disk present at L4-L5, without significant stenosis. (Tr., at 352.)

On January 20, 2010, Harris had an appointment with Eric Mayer, MD, Staff Physician of the Center for Spine Health at Lutheran Hospital.  Dr. Mayer diagnosed Harris with Lumbosacral Spondylosis with Myelopathy; as well as degenerative disc disease, lumbosacral; and lumbosacral neuritis.  Harris reported back pain for two years, with severe back pain since a renal donation (left kidney), as well as left leg pain which was intense over the previous four months.  Harris reported that the pain was exacerbated by bending backward or forward, lifting, prolonged static positions of standing or sitting, and that the pain was reduced by lying down or heat. (Tr., at 622.)  On examination, Dr. Mayer noted some limited lumbar range of motion. (Tr., at 624.)  Dr. Mayer planned bilateral lumbar injections, followed by physical therapy.  She was instructed to return in six weeks. (Tr., at 625.)

On January 21, 2010, Harris applied for Disability Insurance benefits and for Supplemental Security Income benefits. (Doc. 13, Tr., at 146-149, 150-153.)

State agency physician Laura M. Rosch, DO, reviewed Harris's file on May 27, 2010, and completed a Physical Residual Functional Capacity assessment.  (Tr., at 440-445.)  Dr. Rosch determined that Harris could occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds.  Harris could stand or walk for at least 2 hours in an 8-hour workday, and she could sit for about 6 hours in such a workday.  (Tr., at 442.)

At a May 4, 2010, appointment with the gynecologist Pascal Jarjoura, MD, Harris stated that "she is having worsening mid lower abdominal/ pelvic pain for 2 week[s] that is constant."  (Tr., at 464.)  Later that month, at a May 7, 2010, appointment with Physical Therapist Kimberly Wiebusch, Harris said her chief complaint was abdominal and groin pain, and incontinence.  (Tr., at 455.)

Harris had an office visit with internist Vipan Nikore, MD, on August 4, 2010.  At that appointment, Harris complained of "fishy urine odor and lower abdominal pain."  (Tr., at 587.)  She reported that the pain began one week prior "and has been gradually getting worse," and the pain was located in the mid-lower abdomen.  (Tr., at 587.)  Harris reported to Dr. Nikore that she saw the spine specialist Dr. Mayer in February, who gave her a shot which did not work.  She had prescriptions for Flexeril, and Vicodin, and a referral for physical therapy.  Dr. Nikore recommended that she follow up with the spine specialist Dr. Mayer.  (Tr., at 588.)

On August 26, 2010, Harris presented to Jennifer Giordano, DO, with "chronic lower back pain," and lower abdominal pain.  (Tr., at 576-577.)  Harris

6

reported that her abdominal pain began two years prior, but had worsened in the previous three weeks.  Harris also complained of "lower back pain that has been for 7 years on and off, and 2 years constantly.  Worse when it rains and is cold. Radiates to left leg with 'lightning' pain to left toes."  (Tr., at 576.)

On August 31, 2010, Harris had another appointment with Eric Mayer, MD, of the Center for Spine Health.  (Tr., at 525.)  Dr. Mayer noted that Harris complained of "severe back pain since renal donation (left kidney) who endorses left Leg pain over the last 4 months that is intense."  Harris described "constant, sharp, throbbing pain and rare intense spasm."  Dr. Mayer noted that, since her last visit, "she has been only partially compliant with PT in the spring and endorses being very pain limited spending weeks and months lying in bed."  (Tr., at 525.)

Dr. Mayer assessed Harris with Chronic Pain Syndrome (primary encounter diagnosis); Lumbar Pain; Thoracic Back Pain; and Joint Pain.  His plan was to refer Harris to Rheumatology for "Whole Person" pain, and also referred her to CPRP. (Tr., at 526.)

At an October 6, 2010, appointment with the gynecologist Margaret McKenzie, MD, Harris complained on lower abdominal pain over the preceding two weeks.  "She has had this problem chronically for the past 2 years but now it has gotten worse."  She described pain in the suprapubic region, "described as burning, which is now constant.  Also associated pain in central lower abdomen."  (Tr., at 567.)

On referral from Dr. Mayer, Harris was seen by rheumatologist Yih Chang C. Lin, MD, on Oct. 21, 2010, for "whole person" pain.  Harris reported "generalized body aches," which was initially intermittent of moderate severity, but Harris complained that pain had since become worse for the previous two years, with "constant pain every day." (Tr., at 555.)  Dr. Lin reported that Harris was found to have "severe L5-S2 degenerative changes w S1 nerve root impingement."  She reported no improvement with two years of physical therapy, and received only temporary relief from a steroid shot earlier in the year.  Harris also reported only partial relief from Vicodin and flexeril. (Tr., at 555.)  Upon examination, Dr. Lin noted back spasms.  (Tr., at 557.)

Dr. Lin noted that Harris satisfied recently published preliminary criteria for fibromyalgia.  (Tr., at 557.)  Harris was diagnosed with fibromyalgia syndrome, back pain, finger pain, and muscle spasms.  (Tr., at 559.)  The treatment plan noted that, after pain is better controlled with chronic pain management, Dr. Lin "encouraged graded exercise regimen, yoga, pool therapy, good sleep hygiene, and consider psychiatric consult for CBT [cognitive behavioral therapy]."  Harris was started on a prescription of Elavil, and instructed to update Dr. Lin within 2-4 weeks.  (Tr., at 558.)

Harris was examined by Bonita Coe, MD, on March 23, 2011. (Tr., at 612.)  Harris reported that she had breast reduction surgery, at which point she got Percocet, which helped her.  (Tr., at 612-613.)  She reported that Flexeril makes her sleep, and Elavil is not helping.  She felt worse after the back injection which she

8

had.  She has had back pain for three years, but the upper-back pain is relieved since the breast reduction.  She has mid-back pain.  For her chronic back pain, she was prescribed short-term use of Percocet, with a trial of gagapentin.  (Tr., at 613.)

Harris was seen by Dr. Coe again on April 29, 2011.  The physical therapist reported to Dr. Coe's office that Harris was in a lot of pain, which was proving to be a barrier to the physical therapy treatment.[3]  (Tr., at 611.)  Dr. Coe noted that Harris' fibromyalgia and back pain was "a chronic problem that will likely last indefinitely, she also needs to have a TENS unit."  Harris to follow up in three months.  (Tr., at 612.)

Harris was referred to the pain specialist Hong Shen, MD, by Dr. Coe.  (Tr., at 655.)  At her May 20, 2011, appointment with Dr. Shen, Harris complained of general body pain and back pain.  She reported that the pain started originally 14 years earlier.  (Tr., at 655.)  Harris reported constant pain, 10 on a scale of 10.  "Nothing makes my pain better."  The pain is primarily the low back, but the entire back has pain, mainly the left side, and it radiates to her lower extremities.  (Tr., at 656.)  Dr. Shen noted that Harris had received an epidural injection by Dr. Mayer in the spine clinic, physical therapy and medication, without any benefit. (Tr., at 657.)  There are 18 of 18 tender points, and limited lumbar range of motion.  (Tr., at 658.)

---

[3]  Harris cancelled a scheduled April 15, 2011, appointment for physical therapy. Tr., at 670.

9

Dr. Shen diagnosed chronic pain syndrome, lumbar pain, thoracic back pain, joint pain, and fibromyalgia.  (Tr., at 658.)  Dr. Shen believed Harris will benefit from chronic pain rehabilitation to restore her function and improve her pain. (Tr., at 659.)

On Oct. 4, 2011, Harris had another appointment with Dr. Lin.  (Tr., at 664.) Harris was prescribed gabapentin (Neurontin) and duloxetine (Cymbalta).  (Tr., at 662-663.)  Dr. Lin also provided a letter for Harris, which stated, in part:

> . . . Ms. Aretha Harris has severe fibromyalgia and severe lumbar (L5-S1) degeneration, which has not responded to Elavil, flexeril.  She also tried physical therapy, pool therapy, chronic pain management, and psychiatry without relief.
>
> She has been in severe pain for past 4 years which prohibits on [sic] working.  She also cannot afford to pay for other medications such as Cymbalta and Neurontin.

(Tr., at 661.)  See also identical letter of November 23, 2011.  (Tr., at 701.)

On Oct. 20, 2011, Harris returned to Dr. Mayer for a follow-up visit.  (Tr., at 674.)  Dr. Mayer noted that, since her last visit to him in August 2010, she had been since by multiple physicians, and had been managed by rheumatology and pain medicine.  "Patient was adamant with my nurse that she 'needed' an injection to her spine to be able to function."  (Tr., at 674.)  Dr. Mayer personally reviewed the lumbar MRI "that shows exquisitely well preserved disc hydration and disc height at virtually every level with mild loss of hydration that would not be concordant with patient's widespread pain over her whole body at L5-S1 that is noncompressed both exiting nerve."  Dr. Mayer's assessment was:  "Patient has widespread pain

10

and loss of functional status that is out of proportion to absence of objective findings and benign radiological findings." (Tr., at 675.)

Dr. Mayer diagnosed Harris with "chronic pain associated with significant biopyschosocial dysfunction," and physical deconditioning. Dr. Mayer recommended, and referred, Harris for evaluation and treatment in a functional restoration program that has a prominent psychology/psychiatry component. (Tr., at 675.)

Medical Source Statements of physical capacity and mental capacity were completed by Jennifer Jue, MD, dated November 8, 2011. (Tr., at 666-669.) Dr. Jue stated that, due to her impairment, Harris could not lift or carry any weight at all. Dr. Jue opined that Harris could only stand or walk fifteen minutes, total, per work day. In addition, Harris is only capable of sitting for a total of fifteen minutes per work day. Harris can rarely or never climb, balance, stoop, crouch, kneel or crawl. (Tr., at 668.) Also, she cannot push or pull, and only occasionally reach, handle, feel, or use fine or gross manipulation. In addition to a hypothetical morning break, lunch, and an afternoon break, Harris would need to rest for an additional period of time during an 8-hour work day. (Tr., at 669.)

Dr. Jue states that a brace and a TENS unit have been prescribed for Harris. Harris needs an at-will sit/stand option. Harris experiences severe pain. Other than the above, Dr. Jue does not identify any additional reasons that would interfere with Harris working eight hours a day, five days a week. (Tr., at 669.)

11

On November 17, 2011, Harris saw the internist Muhammad Ali Syed, MD. Harris complained of pain in her back and legs.  (Tr., at 678, 711.)  Dr. Syed provided referrals to Pain Management and the Spine Center. (Tr., at 678.)  Dr. Syed prescribed oxydodone-acetaminophen (Percocet), and instructed Harris to do back  exercises and lose weight.  (Tr., at 679-680, 713.)

Several days later, Harris had an appointment with Judith Volkar, MD, on November 22.  (Tr., at 716.)  Harris complained of pelvic pain, present for one month, 10 on a scale of 10.  Harris requested "all STD testing including blood work."  She also complained of vaginal discharge and urinary frequency.  Dr. Volkar noted that Harris had been seen by "multiple other providers[4] for these complaints and has had multiple ultrasounds and pelvic CT all of which have been normal." Dr. Volkar also noted that "She continued with PT for one month then left.  She has been referred to pain clinic and has not gone."  (Tr., at 716.)

Harris was assessed with vaginitis, with minimal discharge, and pelvic pain. (Tr., at 718)  With regard to the pelvic pain, Dr. Volkar commented that "nothing is any different than previous multiple exams."  (Tr., at 719.)

Harris had an appointment with Dr. Lin the next day, on November 23, 2011. (Tr. at 702-703.)  Dr. Lin referred Harris for another lumbar spine MRI, which was performed on December 1, 2011.  (Tr., at 708.)  The exam noted "minimal

---

[4] The court's recitation of Harris' medical history does not include all of these visits, only a representative sample of the most significant appointments.

degenerative changes in the facet joints of the lower lumbar spine and at the L5-S1 disk space."  (Tr., at 704.)


## IV.  TESTIMONY OF VOCATIONAL EXPERT

The vocational expert, Dr. William Green, testified that Harris had past relevant work as a caregiver in homes of the elderly, which is a DOT code 354.777-014, "home attendant."  That is medium exertion level, semi-skilled, SVP of three. She had also worked as a daycare worker, DOT code 359.677-018, which is a light exertional level, ordinarily semi-skilled, SVP of four.  Since Harris was a helper, it should be unskilled.  Harris was also a fast food worker, DOT code 311.472-010, light exertion, unskilled, SVP of two.  Finally, she reported being a stocker in a department store, as part of her duties of a sales attendant, so the DOT code is 299.677-010, light, unskilled, SVP of two.  (Doc. 13, tr., at 74.)

The ALJ posed a hypothetical question concerning a 29-year-old woman with a high school education and the same work experience.  (Tr., at 74-75.)  Dr. Green was further asked to assume that the person retains the residual functional capacity for sedentary work, but is limited to simple, routine, and repetitive tasks. The ALJ asked, "Could this individual perform any of the past relevant jobs?"  Dr. Green answered no. (Tr., at 75.)

The ALJ then asked if there were any other jobs that exist in the local, regional or national economy, for this hypothetical?  In response to the hypothetical, Dr. Green answered that there are sedentary, unskilled jobs as cashier, DOT code

211.462-010.  There are 2,500 such jobs in Ohio, and 375,000 nationally.  There are also document-preparing jobs, such as a scanner, which is also sedentary, unskilled, DOT code 249.587-018.  There are 550 such jobs in Ohio, and 21,000 nationally.  Dr. Green also mentioned an escort vehicle driver, DOT code 919.663-022, sedentary, unskilled.  There are 800 jobs in Ohio, and 19,000 nationally.  (Tr., at 75.)  Finally, Dr. Green mentioned a job as a shellfish food preparer, DOT code 311.674-014.  It is sedentary and unskilled, and there are 650 jobs in Ohio, and 20,000 jobs nationally. The ALJ confirmed that all of the jobs mentioned by Dr. Green were sedentary. (Tr., at 76.)

The ALJ then changed the hypothetical, assume the same individual, with the same vocational factors, "but due to a combination of problems, this individual is unable to engage in sustained work activity for a full eight hour day on a regular and consistent basis.  Would there be any jobs for this individual?"  Dr. Green responded, "No."  (Tr., at 76.)


V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law.  At step one of the five-step sequential analysis, the ALJ found Harris had not engaged in substantial gainful activity since December 31, 2008.  (Doc. 13, tr., at 27.)  At step two, the ALJ ruled Harris suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, fibromyalgia, obesity (250#/69"), and s/p elective left nephrectomy (20 C.F.R. 404.1520(c) and 416.920(c))."  (Tr., at 27.)

14

After reviewing the medical record of Harris' complaints of abdominal pain and urinary incontinence, the ALJ determined that:

> The undersigned notes that despite testing and consultation, no etiology was offered to explain the claimant's complaints of abdominal pain, other than acute bouts of vaginitis, which were treated with antibiotics.  A severe impairment cannot be based on the claimant's subjective complaints alone, but must be supported by signs, symptoms, laboratory findings, or diagnostic testing.  Since the record does not offer evidence to support an impairment related to the claimant's abdominal pain, it is not established as a medically determinable severe impairment.  20 C.F.R. 404.1508 and 416.908.  To the extent that the claimant's abdominal pain was a byproduct of her degenerative disc disease, fibromyalgia, and or obesity, it has been considered in finding 5 below.
>
> The undersigned notes the claimant's complaints of urinary incontinence lack consistency.  She initially reports suffering incontinence since giving birth in September 2007, then later reports suffering incontinence for 10 years.  She reports chronic incontinence at times, and during other treatment appointments denies any problems with incontinence.  Testing revealed reduced bladder capacity but normal functioning.  The claimant was advised to try behavioral changes to correct her frequent urination and to seek therapy if necessary.  The claimant stopped complaining of urinary problems to her treatment providers in August 2010, suggesting the problem had improved.  Regardless, the undersigned find, based on the weight of the evidence, that the claimant's urinary incontinence does not result in more than minimal function limitations and is not "severe" within the meaning of the Regulations.

(Tr., at 29.)  Thus, at the next step, the ALJ determined that none of these impairments, individually or combined, equaled the severity of one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(c), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr., at 29.)

The ALJ next assessed Harris' residual functional capacity ("RFC").  He concluded that Harris has the residual functional capacity to perform sedentary

15

work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she is limited to simple, routine, repetitive tasks.  (Tr. , at 30.)

In making this finding, the ALJ stated that he considered all of Harris' symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence.  (Tr., at 30.)  The ALJ conducted a two-step analysis:  First, he addressed whether Harris' medically determinable impairments could reasonably be expected to cause her pain and other symptoms.  Second, the ALJ evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit  Harris' functioning.  (Tr., at 30-37.)

The ALJ found that Harris' medically determinable impairments could reasonably be expected to cause the alleged symptoms:

> . . . however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  Overall, the claimant's impairments do not appear to prevent her from engaging in work activity.

(Tr., at 35.)  For example, the ALJ noted that, despite Harris' testimony that she spends 45 minutes of every hour lying down, there was no finding of muscle atrophy.  The ALJ also pointed out that Harris' reports of the onset of her pain have ranged from a year or two to claiming that she had suffered chronic back pain since she was sixteen, yet she did not seek treatment for her back pain until December 2009.  The ALJ also found:

> MRI results have shown only mild degenerative changes and the
> claimant's pain complaints have been called 'out of proportion' to her
> objective medical findings.  The claimant's report of suffering constant
> 10/10 pain, suffering near constant back spasms, and spending her
> days lying down appear extreme and exaggerated in relation to the
> medical evidence.

(Tr., at 35.)

The ALJ addressed the medical opinions of claimant's treating physicians.

The ALJ gave "little weight" to the opinion letters (tr., at 661) of Dr. Lin dated

October 4, 2011, and November 23, 2011 (tr., at 701).  The ALJ found that "Dr. Lin's

findings appear to be based heavily on the claimant's subjective pain complaints

and her conclusion that the claimant is unable to work is poorly explained."  (Tr., at

36.)

As to Dr. Jue's opinions (tr., at 666-669), the ALJ stated that it was unclear

what Dr. Jue's medical specialty was, because she had offered both mental health

and physical health function opinions, and that Dr. Jue failed to discuss her

treatment history (if any) with Harris.  The ALJ opined that Dr. Jue's opinions

"were offered with little explanation or reference to objective testing and suggest

extreme limitations out of proportion with the medical evidence."  Accordingly, the

ALJ gave Dr. Jue's opinions "little weight."  (Tr., at 36-37.)

The ALJ pointed to two state medical agency consultant's opinions, that

Harris was limited to less than light exertional work, which the ALJ found to be

consistent with the evidence.  However, the ALJ found Harris to be "slightly more

impaired based on evidence received at the hearing level."  Thus, the consultant's

findings were given weight "only to the extent they support the above described residual functional capacity." (Tr., at 37.)

The ALJ found that Harris is unable to perform any past relevant work. (Tr., at 37, citing 20 CFR §§ 404.1565 and 416.965). The ALJ also determined that Harris was 26 years old on the onset date of the alleged disability, and that she has at least a high school education, the ability to communicate in English. Transferability of job skills was not found to be material to the determination of disability. (Tr., at 37.)

Considering Harris' age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Harris can perform. (Tr., at 37-38, citing 20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a).)

The ALJ found that Harris has not been under a disability, as defined in the Social Security Act, from December 31, 2008, through the date of his decision. (Tr., at 38, citing 20 CFR §§ 404.1520(g) and 416.920(g).)


## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. See 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." See 20 C.F.R. §§ 404.1505, 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited

19

in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).


VIII.  ANALYSIS

Harris challenges the ALJ's decision on this basis:  "The Administrative Law Judge erred in his determination that Plaintiff is not disabled by pain and did not give deference to Plaintiff's treating physician."  (Doc. 18, at 16.)

A.  Disabled by Pain

Harris argues that a disability claim involving fibromyalgia can be supported by the claimant's subjective complaints, so long as there is objective medical evidence of the underlying medical condition in the record.  (Doc. 18, at 16.)  Harris asserts that a two-part analysis should be used to evaluate the credibility of a claimant's subjective reports of pain.  (Doc. 18, at 16-17, citing 20 CFR §§ 404.1529, 416.929; Rogers v. Commissioner, 486 F.3d 234, 247 (6th Cir. 2007).)  Harris does not argue that the ALJ did not use the two-part analysis; rather, she contends that the ALJ improperly evaluated the credibility of Harris' statements on the intensity, persistence, and limiting effects of her symptoms.  (Doc. 18, at 17-18.)

Harris states that, if the ALJ rejects a claimant's complaints as not credible, he must clearly state his reasons for doing so.  (Doc. 18, at 18, citing Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997).)  Harris concedes that the ALJ stated that "inconsistencies between the medical record and the claimant's allegations and testimony severely undermines [her] credibility."  (Doc. 18, at 18,

20

quoting tr., at 35-36.)  Further, Harris notes the ALJ found her complaints of pain appeared "extreme and exaggerated in relation to the medical evidence," including minimal objective findings.  Id., quoting tr., at 35.

Harris argues that the ALJ's statements demonstrate either "a misunderstanding of the fibromyalgia diagnosis, which inherently does not produce objective findings, see Preston v. HHS, 854 F.2d 815, 818 (6th Cir. 1988); Swain v. Commissioner, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003), or disbelief in the very strong opinions of Plaintiff's treating physicians." (Doc. 18, at 18.)

Harris contends that the ALJ's assessment of the claimant's credibility "cannot place [undue] emphasis on the absence of objective medical evidence since the severity of fibromyalgia cannot be confirmed by objective clinical testing." (Doc. 18, at 18-19, citing Swain, 297 F.Supp.2d at 993.)  The court in Swain stated that the "ALJ must assess credibility based on factors set out in the regulations and explain why the claimant's complaints of disabling pain are not credible." (Doc. 18, at 19, quoting Swain, 297 F.Supp.2d at 990.)

As noted above, the Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms the basis of the claimant's disability claim.  Rogers, 486 F.3d at 247.  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."  Id. (citing 20 C.F.R. § 416.929(a)).  If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do

basic work activities."  Id.  Social Security Ruling 96-7p lists the factors relevant to the ALJ's determination at this step.  These factors include:  the individual's daily activities, the frequency and intensity of the individual's pain or other symptoms, any medication the individual takes or has taken to alleviate pain or other symptoms, and treatment, other than medication, the individual has received for relief of pain or other symptoms.  SSR 96-7p.

The Commissioner points out that a diagnosis of fibromyalgia does not equate to a finding of disability, or an entitlement to benefits.  (Doc. 19, at 11, quoting Stankoski v. Astrue, No. 12-4227, 2013 WL 4045974, at *4 (6th Cir. Aug. 12, 2013).)  Rather, evidence of functional abilities is what matters in determining whether fibromyalgia results in a disabling impairment.  Id., citing Vance v. Commissioner, No. 07-5793, 2008 WL 162942, at *4 (6th Cir. Jan. 15, 2008).)  The Commissioner claims that the medical findings regarding Harris' functional abilities are consistent with the ALJ's conclusion that she could perform a limited range of sedentary work:

> Throughout treatment, Plaintiff consistently had full strength in her extremities with no muscle atrophy, normal reflexes, intact cranial nerves, normal sensation, and normal musculature and muscle tone (Tr. 257, 475, 526, 552, 658, 675, 725).  Records of Plaintiff's treating pain management specialist Dr. Shen, to which the ALJ also referred, further support her RFC (Tr. 33).  Dr. Shen assessed Plaintiff's gait as normal and noted that she ambulated without an assistant device, she had no signs of muscle atrophy, had normal range of motion except being minimally limited in her lumbar spine, and she had a normal SLR (Tr. 658).

(Doc. 19, at 12.)

22

An ALJ may properly consider a claimant's activities when judging her credibility.  Malone v. Commissioner, No. 12-3028, 2012 WL 5974463, at *2 (6th Cir. Nov. 29, 2012) (per curiam); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The court notes that the ALJ found that Harris' impairments did not appear to prevent her from engaging in work activity, based in part on her own testimony of her activities.  (Tr., at 35.)  For example, the ALJ pointed out that, although Harris claims an onset date of December 2008, she continued to be able to work until 2010.  (Tr., at 36; see generally tr., at 52, 63-64.)

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference.  Walters, 127 F.3d at 531.  Nevertheless, the ALJ's assessment of the claimant's credibility must be supported by substantial evidence.  Id.  Reference to the ALJ's decision makes it clear that the ALJ properly considered the factors outlined in Rogers and Social Security Ruling 96-7p.  See generally tr., at 33-36.  The court finds that the ALJ's credibility determinations regarding Harris' subjective complaints are reasonable and supported by substantial evidence.  Rogers, 486 F.3d at 249.

Further, the Commissioner points out that Harris did not allege fibromyalgia as the basis for her applications for benefits, naming instead back pain and incontinence, both of which are verifiable with objective testing.  (Doc. 19, at 13.)  The ALJ did find that Harris had several severe impairments (degenerative disc disease, obesity, and elective left nephrectomy) in addition to fibromyalgia, which would all be verifiable with objective testing.  Id.  In light of the multiple disabling

23

impairments alleged, the Commissioner asserts that the requirement to consider objective medical evidence is especially important.  Id., citing Trauterman v. Commissioner, No. 07-4353, 2008 WL 4493172 (3d Cir. Oct. 8, 2008).  In Trauterman, the Third Circuit found that it was appropriate for the ALJ to consider the objective medical evidence of record where, as here, the claim of disability was not attributed exclusively to fibromyalgia. Trauterman, 2008 WL 4493172, at *2. The record is clear that the ALJ did properly consider objective medical evidence in the overall context of his disability determinations.  See generally Minor v. Commissioner, No. 12-1268, 2013 WL 264348, at *16 (6th Cir. Jan. 24, 2013) (citing 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513) (ALJ is required to consider all objective medical evidence in record).

Finally, the Commissioner notes that an individual is not required to be pain-free to be found not disabled.  (Doc. 19, at 13-14, citing Qantu v. Barnhart, No. 02-1314, 2003 WL 21921404, at *5 (10th Cir. Aug. 13, 2003), and other cases; see also Byrd v. Commissioner, No. 5:12CV0828, 2013 WL 1150138, at *7 (N.D. Ohio Jan. 14, 2013) (citing Qantu).)  The ALJ addressed Harris' pain by limiting her to a range of sedentary work.

The court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by the medical evidence.  The ALJ properly considered objective medical evidence in the overall context of his disability determinations.  The ALJ's credibility determinations regarding Harris' subjective complaints are reasonable and supported by substantial evidence.

24

## B.  Treating Physician Opinions

Harris contends that her treating physicians all provided consistent opinions as to her fibromyalgia and her severe debilitating pain.  (Doc. 18, at 19.)  She also asserts that the ALJ did not address her physician's opinions when evaluating her pain and credibility.  Id.  The court finds neither contention accurate.

Harris claims that the ALJ "ignored the very strong opinions of Plaintiff's doctors," and instead focused on inconsistencies in her testimony, that she did not seek treatment until December 2009 and continued to work until 2010, that her treatment compliance had been questionable, and that she had expressed interest in getting pregnant.  (Doc. 18, at 20.)  Harris argues that these inconsistencies are unsupported in the record as a whole, "and are insufficient to discredit Ms. Harris' pain complaints and the positions taken by her physicians."  Id. at 20-21.  Harris believes that the testimony is consistent that her daily activities are "severely impacted" by her degenerative disc disease and fibromyalgia, and that she is incapable of work.  Id. at 22.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of

25

the individual's health and treatment history.  Id.; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[5]  The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  Vance, 2008 WL 162942, at *3 (citing Jones v. Commissoner, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  Blakley, 581 F.3d at 406; Vance, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  Blakley, 581 F.3d at 406-407;

---

[5]  Effective March 26, 2012, Sections 404.1527 and 416.927 of the Code of Federal Regulations were amended.  Paragraph (d) of each section was redesignated as paragraph (c).  See 77 F.R. 10651-01, 2011 WL 7404303.

Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Remand may be appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." Kalmbach v. Comm'r of Soc. Sec., No. 09-2076, 2011 WL 63602, at *8 (6th Cir. Jan. 7, 2011) (quoting Wilson, 378 F.3d at 543-46).

The Commissioner responds that the ALJ found that Dr. Lin's opinions were not well-supported by the record evidence, or her own treatment records, and were based largely on Harris' subjective pain complaints.  (Doc. 19, at 15, citing tr., at 36.)  The ALJ assessed the the opinion letters (tr., at 661) of Dr. Lin dated October 4, 2011, and November 23, 2011 (tr., at 701) as entitled to "little weight."  The (identical) letters simply stated that Harris suffered from "severe fibromyalgia and severe lumbar (L5-S1) degeneration," which had not responded to Elavil or Flexeril."  The letter(s) also noted that she had tried physical therapy, pool therapy, chronic pain management, and psychiatry without relief.

First of all, the court notes that Dr. Lin's conclusion that Harris' severe pain "prohibits" her from working  (tr., at 661) is essentially a conclusion on the ultimate issue of disability.  Such a conclusion, even by a treating physician, is not entitled to controlling weight, as the issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner.  See 20 C.F.R. § 416.927(d)(1); Vance, 2008 WL 162942, at *3; Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir.

27

2003) (opinion that claimant is "disabled" is not a medical opinion); Houston v. Secretary, HHS, 736 F.2d 365, 367 (6th Cir. 1984).  Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference.  See 20 C.F.R § 416.927(d)(3).

The ALJ commented that Dr. Lin's findings of "severe lumbar degeneration" were inconsistent with the December 2011 MRI which indicated "minimal degenerative changes."  (Tr., at 36.)  The ALJ found Dr. Lin's conclusion that Harris was unable to work was poorly explained.  Id.

The Commissioner also points out that while Dr. Lin stated that Elavil had not worked for Harris, the record indicates that she stopped taking it after two weeks.  (Doc. 19, at 15-16, citing tr., at 614.)  The Commissioner finds further support for the ALJ's conclusion in the medical record, which demonstrated that "all objective tests of record were either negative or noted minimal findings."  (Doc. 19, at 15.)

As to Dr. Jue, the ALJ found that it was unclear from her opinion report how long she treated Harris, or what her medical specialty was.  In addition, Dr. Jue did not provide any explanation for her findings, nor any reference to any specific objective findings or treatment records.  (Tr., at 36-37; see generally tr., at 666-669.) The brief filed by Harris does not provide any clarification on these issues, nor do there appear to be any treatment records from Dr. Jue in the record.  It is less than clear that Dr. Jue should be considered a treating physician.

28

In reviewing Harris' medical record, the ALJ would have encountered opinions and comments by some of Harris' treating physicians which are less supportive of her contentions here.  For example, Harris had several appointments with Eric Mayer, MD, Staff Physician of the Center for Spine Health at Lutheran Hospital over a period of time.  See, e.g., tr., at 622-625, 525-526, 674-675.  Dr. Mayer's Oct. 20, 2011, assessment was Harris reported "widespread pain and loss of functional status that is out of proportion to absence of objective findings and benign radiological findings."  (Tr., at 675.)  See also comments by Dr. Volkar, at the November 22, 2011, visit.  (Tr., at 716, 719.)

The ALJ has the responsibility for reviewing all the evidence in making his determinations.  20 C.F.R. § 416.927(e)(2).  The ALJ evaluates every medical opinion received in evidence.  20 C.F.R. § 416.927(c).  The ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations.  20 C.F.R. § 416.945(a)(3).  Although the ALJ reviews and considers all the evidence before him, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 416.946(c).  Here, the ALJ's findings were supported by relevant evidence and consistent with the record as a whole.  The court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by medical evidence.

## IX.   SUMMARY

For the foregoing reasons, the court finds that the decision of the

Commissioner is supported by substantial evidence.  Accordingly, that decision is

affirmed.


IT IS SO ORDERED.

Dated:   Aug. 13, 2014                         /s/ Kenneth S. McHargh
                                                         Kenneth S. McHargh
                                                         United States Magistrate Judge